UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNA K.,[1] | ) |
|                     Plaintiff, | ) No. 19 CV 599 ) ) |
| v. | ) Magistrate Judge Young B. Kim ) |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) ) May 11, 2020 |
|                     Defendant. | ) ) |

**MEMORANDUM OPINION and ORDER**

Anna K. ("Anna") seeks disability insurance benefits ("DIB") and supplemental security income ("SSI") based on her claim that she is disabled by obesity and reactive arthritis secondary to hidradenitis suppurativa. Before the court are the parties' cross motions for summary judgment. For the following reasons, Anna's motion is granted, and the government's is denied:

**Procedural History**

In her applications for DIB and SSI, Anna alleged that she became disabled on December 10, 2014. (R. 7, Administrative Record ("A.R.") at 23, 179-86.) After her applications were denied initially and upon reconsideration, (id. at 67-88, 94-97, 106-13), Anna requested and was granted a hearing before an administrative law judge ("ALJ"), (id. at 23, 117-19, 132-37). Anna appeared for the hearing in November 2017 along with her attorney and a vocational expert ("VE"). (Id. at 36-66.) The ALJ

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect her privacy to the extent possible.

denied her claims in March 2018. (Id. at 23-31.) Thereafter, the Appeals Council denied Anna's request for review, (id. at 7-11), rendering the ALJ's ruling the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Anna filed this lawsuit seeking judicial review of the Commissioner's decision, and the parties consented to this court's jurisdiction, *see* 28 U.S.C. § 636(c); (R. 6).

## The ALJ's Decision

The ALJ followed the required five-step process in evaluating Anna's disability claims. *See* 20 C.F.R. § 404.1520(a). At step one the ALJ found that Anna had not engaged in substantial gainful activity since December 10, 2014. (A.R. 25.) At step two the ALJ concluded that Anna suffers from: (1) severe impairments related to obesity and reactive arthritis; (2) non-severe impairments associated with cervical degenerative disease; and (3) non-medically determinable impairments caused by chest pain, feet swelling, and dizziness. (Id. at 26.) At step three the ALJ determined that Anna's impairments do not meet or medically equal any listed impairment. (Id. at 26-27.) Before turning to step four, the ALJ assessed Anna as having a residual functional capacity ("RFC") to perform light work, except that she can stand or walk for only four hours in an eight-hour workday and can only occasionally stoop, kneel, crouch, crawl, and climb. (Id. at 27.) At step four the ALJ found that Anna is able to perform her past relevant work as a receptionist and car rental clerk. (Id. at 30-31.) Accordingly, the ALJ determined that she is not disabled. (Id. at 31.)

## Analysis

Anna argues that the ALJ erred by crafting an RFC that was based on: (1) outdated opinions from non-examining state agency physicians, which were contradicted by the opinion of the examining physician; (2) improper interpretation of medical evidence; and (3) an incorrect symptom assessment. This court reviews the ALJ's decision to ensure that it is supported by substantial evidence, meaning "more than a mere scintilla" but no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations and citations omitted). To adequately support a decision, the ALJ must "build a logical bridge from the evidence to [her] conclusion" that the claimant is not disabled. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). The court's role is neither to reweigh the evidence nor to substitute its judgment for the ALJ's. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). That said, if the ALJ committed an error of law or "based the decision on serious factual mistakes or omissions," reversal is required. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

### A. State Agency Physicians

Anna argues that in developing her RFC, the ALJ erred when she afforded more weight to the state agency reviewing physicians' "stale" opinions than the weight she assigned to the examining physician's opinion. (R. 31, Pl.'s Reply at 2; see also R. 13, Pl.'s Br. at 8-12.) When weighing medical opinions, an ALJ must consider certain regulatory factors, including the length, nature, and extent of the treatment

3

relationship, the supportability of the medical source's opinion, the consistency of the opinion with the record, and the source's specialization. 20 C.F.R. § 404.1527(c); *see also Walker v. Saul*, ___ Fed. Appx. ___, 2020 WL 1698857, at *3 (7th Cir. April 8, 2020). The ALJ also "must consider the entire record, including all relevant medical and nonmedical evidence," and adequately explain why she weighed an opinion in light of the record. *Murphy v. Astrue*, 454 Fed. Appx. 514, 518 (7th Cir. 2012) (internal quotations and citations omitted).

When the ALJ evaluated the reviewing physicians' opinions, she afforded "some weight" to Dr. James Madison's opinion at the initial consideration level and "great weight" to Dr. James Greco's opinion at the reconsideration level. (A.R. 30, 72, 84-85.) In her evaluation of the examining physician's opinion, the ALJ assigned "some weight" to Dr. Dinesh Jain's opinion. (Id. at 30.) After considering the record evidence, the ALJ assessed Anna as having the capacity to perform light work with the restrictions that she can stand or walk for four hours in an eight-hour workday and can occasionally stoop, kneel, crouch, crawl, and climb. (Id. at 27, 30.)

Anna asserts that the ALJ erred by relying on "outdated" opinions from Drs. Madison and Greco and by discounting the opinion of Dr. Jain. (R. 13, Pl.'s Mem. at 8-12.) She argues that if the ALJ had properly weighed the opinion evidence, including Dr. Jain's opinion that she has difficulty handling objects, the ALJ would have reached a contrary result because the VE testified that a restriction to occasional handling would eliminate all jobs. (Id. at 9, 12.) Anna cites *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003), for the rule that "[a]n ALJ can reject an

4

examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." (R. 13, Pl.'s Mem. at 9-10.) Based on this authority, she argues that the ALJ was not permitted to place great weight to non-reviewing physicians who lacked significant medical records and whose opinions were contradicted by an examining physician. (R. 31, Pl.'s Reply at 2.)

The court begins with the ALJ's evaluation of the opinion of the examining physician, Dr. Jain, who wrote that Anna can lift and carry up to 20 pounds, sit for two hours, stand for one hour, and walk for 30 minutes, but she has difficulty handling objects. Dr. Jain's opinion was formulated from his one-time examination of Anna in March 2016, during which she reported that her left index finger was "slightly swollen" and that she had "difficulty flexing the left finger due to swelling." (A.R. 358.) Anna exhibited normal range of motion in her upper extremities, no redness or swelling of any joints, and normal pulses, finger dexterity, grip strength, and fine finger manipulation. (Id.) Her lumbar spine range of motion was limited "in part, due to obesity." (Id.) She had no "lesions or rashes." (Id.) She walked without an assistive device but could not walk on her toes or hop on one leg and had moderate difficulty walking on her heels and squatting and rising. (Id. at 359.) Dr. Jain noted Anna's diagnoses as rheumatoid arthritis with polyarthritis, controlled hypertension, and moderate obesity. (Id.)

Despite the foundation Dr. Jain's examination of Anna lends to his assessment of her limitations, the ALJ discounted his opinion and gave greater weight to the

5

opinions of state reviewing physicians who never examined Anna. The ALJ's discrediting of Dr. Jain's opinion, in favor of reviewing physicians' opinions, requires the court "to take notice and await a good explanation for this unusual step." *See Walker*, 2020 WL 1698857, at \*4. The Social Security Administration's own regulations "instruct that the medical opinion of an examining source . . . generally receives more weight than the medical opinion of a non-examining source." *Paul v. Berryhill*, 760 Fed. Appx. 460, 464 (7th Cir. 2019) (citing 20 C.F.R. § 416.927(c)(1)). The ALJ therefore must have a valid reason supported by substantial evidence to elevate the reviewing physicians' opinions above the opinion submitted by Dr. Jain. *See Gudgel*, 345 F.3d at 470.

The first reason the ALJ offers does not supply the necessary support to discredit Dr. Jain's opinion. The ALJ deemed the opinion "vague," (A.R. 30), but Dr. Jain conducted a thorough examination and provided detailed findings, (id. at 357-59). Based on his examination, Dr. Jain limited Anna to sitting for two hours, standing for one hour, and walking for 30 minutes. (Id. at 359.) To the extent the ALJ needed more specificity as to the duration of these exertional limitations, she should have sought clarification from him instead of simply discounting his opinion. *See Paul*, 760 Fed. Appx. at 464 (finding insufficient ALJ's conclusion that opinion was "vague and not specific in terms of functioning" where source provided detailed narrative and ALJ could have followed up to seek clarity).

The ALJ's second reason is similarly unconvincing. The ALJ found that Dr. Jain improperly relied on Anna's subjective complaints regarding her hand

6

symptoms, including her reports that she has difficulty handling objects, typing, opening cans and jars, or turning round doorknobs. (A.R. 30 (citing id. at 359).) According to the ALJ, these subjective symptoms conflict not only with the record but also with Dr. Jain's own assessment of Anna's lifting capacity. (Id.) But the ALJ did not explain her conclusion, and any inconsistency is not apparent.

As to conflicts between Anna's subjective complaints and the record, the records the ALJ cites show that: Anna was "tearful" during a January 2016 office visit because she was "upset about current pain," (id. at 299, 332); her left index finger was swollen during a May 2016 office visit, and she had "difficulty opening jars [and] unlocking doors," (id. at 334); and she reported hand pain and difficulty opening bottles during a January 2017 rheumatology appointment, (id. at 382-83). These records appear to support rather than contradict Dr. Jain's findings that Anna's left index finger was swollen and difficult to flex, and that she has difficulty using her hands when they are stiff. (Id. at 359.) Although the ALJ also cited a May 2016 radiology report showing no fractures, dislocations, or arthritic changes and well-maintained joint spaces in Anna's hands, (id. at 348), the ALJ did not explain how this record conflicted with Anna's symptom complaints.

With respect to an alleged inconsistency between Anna's symptom complaints and her observed lifting capacity, Dr. Jain found that Anna could lift and carry up to 20 pounds. (Id. at 359.) He noted, however, that "when her hands are stiff" she has difficulty handling objects. (Id.) The ALJ did not explain the purported conflict between Anna's symptoms and Dr. Jain's opinion regarding her lifting capacity.

7

Given Dr. Jain's explanation that Anna can perform handling tasks when swelling is down, the court does not find a conflict. Thus, the ALJ's stated reason for discounting Dr. Jain's opinion on this basis is insufficient.

Finally, the ALJ's reliance on Anna's daily activities does not support her decision to grant less weight to Dr. Jain's opinion as compared to the reviewing physicians' opinions. The ALJ determined that Anna's ability to perform "light" household chores, text, and design nails demonstrates a capacity "to perform hand manipulation without limitation." (Id. at 30.) But Dr. Jain opined that Anna can perform such tasks only when her hands are not swollen, and that she cannot handle certain tasks when her hands are "stiff." (Id. at 359.) The ALJ never explained how Anna can manipulate her hands without restriction when experiencing swelling and stiffness of the type noted by Dr. Jain. Even if Anna's daily activities suggest a less restrictive RFC, an ability to "perform[] simple chores" or other tasks "does not indicate a capacity to work full-time." *Paul*, 760 Fed. Appx. at 465. In any event, Dr. Jain did not base his opinion solely on Anna's description of her daily activities. He also examined her and made detailed findings before rendering his opinion. *See Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (finding that ALJ erred in refusing to give physician controlling weight based on reliance on subjective complaints because he also based his opinion on claimant's examination).

The government argues that "a full and fair reading" of the ALJ's decision requires the court to look beyond the ALJ's evaluation of Dr. Jain's opinion and review all treatment records discussed by the ALJ. (R. 22, Govt.'s Mem. at 9-10.) The ALJ

8

no doubt addressed certain records in greater detail earlier in her opinion. (See A.R. 28-29.) But she did not discuss how those records affected the regulatory factors required to be considered in an opinion evaluation. *See* 20 C.F.R. § 404.1527(c). For example, the ALJ did not explain how those records affected the supportability of Dr. Jain's opinion or the consistency of his medical findings with the record evidence as a whole. *Id.* As such, the ALJ failed to supply "a good explanation" when she opted to reject an examining physician's opinion in favor of reviewing physicians' opinions. *See Walker*, 2020 WL 1698857, at *4.

The ALJ also failed to adequately explain the amount of weight she afforded to the reviewing physicians' opinions. Both of these consultants reviewed the record, including Dr. Jain's findings, and Dr. Madison opined that Anna can sit for six hours, stand or walk for six hours, occasionally lift 20 pounds, and frequently lift 10 pounds. (A.R. 30, 72.) Dr. Greco opined that Anna can stand or walk for four hours, sit for six hours, occasionally lift 20 pounds, and frequently lift 10 pounds. (Id. at 30, 84-85.) The ALJ assigned "great weight" to Dr. Greco's opinion and only "some weight" to Dr. Madison's opinion. (A.R. 30, 72-74, 84-86.)

At the initial consideration level Dr. Madison reviewed the record and cited evidence showing swelling and pain in Anna's left index finger. (Id. at 73 (citing January 2016 treatment record and Dr. Jain's findings).) He also pointed to evidence showing "full grip strength in both hands," and reached a different conclusion than Dr. Jain as to Anna's functional capacity. (Id.) Dr. Madison never explained, however, why he found that Anna had no hand manipulation limitations or why he

9

disagreed with Dr. Jain's opinion. (Id. at 73-75.) He merely stated that Dr. Jain overestimated the severity of Anna's restrictions. (Id. at 75.) The ALJ assigned Dr. Madison's opinion the same amount of weight afforded to Dr. Jain's opinion without offering any explanation. As such, she failed to explain the weight she gave to Dr. Madison's opinion. *See Reinaas*, 953 F.3d at 466 (citing 20 C.F.R. § 404.1527(c)); *Murphy*, 454 Fed. Appx. at 518.

As to Dr. Greco's opinion, the ALJ explained that she gave this opinion great weight because he considered additional evidence relating to Anna's impairments. (A.R. 30.) The ALJ did not mention that the additional evidence amounted to two records or that Dr. Greco did not discuss them in his opinion. (R. 31, Pl.'s Reply at 3 (citing A.R. 82, 85).) Nor did she explain how those two records justified giving greater weight to his opinion, especially in light of the fact that his opinion was only slightly more limiting than Dr. Madison's opinion. (Compare A.R. 85 (Dr. Greco's opinion limiting Anna to standing or walking for four hours) with id. at 72 (Dr. Madison's opinion limiting Anna to standing or walking for six hours per workday).) In the end, the ALJ determined that Anna's lower extremity swelling, pain, and obesity supported stricter postural limitations than those assessed by both reviewing physicians. (Id. at 30.) Even so, the ALJ never explained why Dr. Greco's less restrictive opinion warranted greater weight than that afforded to Dr. Jain's. Accordingly, the court agrees with Anna that the ALJ lacked substantial evidence to support her evaluation of the opinion evidence.

10

**B.     Medical Evidence**

In challenging the ALJ's treatment of the medical record, Anna asserts that the ALJ improperly relied on her own lay opinion to interpret medical evidence. (R. 13, Pl.'s Mem. at 8.)  But Anna does not develop any argument to support this assertion or provide any examples of how the ALJ projected her lay opinion onto the record.  The court thus finds this argument to be waived.  *See Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) ("It is well established in our precedent that 'skeletal' arguments may be properly treated as waived.").

The court identifies two points in Anna's argument that appear to relate to her disagreement with the ALJ's handling of record evidence.  First, Anna complains that the ALJ did not "neutrally weigh the record." (R. 13, Pl.'s Mem. at 12.)  She points to the ALJ's statement that a January 2016 treatment record showed Anna's "ANA, RF, and anti-CCP results were negative," which "led her physician to conclude that rheumatoid arthritis was unlikely such that continued use of Naproxen remained appropriate." (Id. (citing A.R. 28).)  Based on the ALJ's language here, Anna asserts that the ALJ was "attempt[ing] to discount the effects of [Anna's] pain." (Id.)  She claims that "what the ALJ fails to mention is that the same examination . . . showed elevated [ESR]." (Id.)  Anna asserts that an elevated ESR indicates "inflammation consistent with an immunological disease." (Id.)

The court finds no cherry picking by the ALJ in this instance.  The subject treatment note specifically states: "ANA, RF and anti-CCP negative but ESR elevated.  Unclear etiology although RA seems less likely.  Possible seronegative

11

arthropathy. Consider primary aldosteronism given hypokalemia and hypertension. Continue Naproxen." (A.R. 294, 327.) Here, the ALJ's summary appears to be reasonable and not, as Anna asserts, a "misrepresent[ation]" of the record. (R. 13, Pl.'s Mem. at 13.) It is not the court's role to reweigh this evidence—or to dictate how the ALJ should summarize this note. *See Pepper*, 712 F.3d at 362.

Second, Anna contends that her RFC should have been more restrictive in light of her obesity. (Id. at 13-14.) She points out that under "old [disability] rules," her weight of 289 pounds and BMI of over 54 would have rendered her "automatically disabl[ed]." (Id. at 13 (emphasis omitted).) As a result, a mere four-hour standing limitation is insufficient, according to her. (Id.) Under the current regulations, obesity is considered throughout the five-step sequential process for evaluating a disability claim. Anna does not argue that the ALJ failed to consider her obesity throughout her analysis. Instead, she claims that the ALJ offered a "merely conclusory" explanation for how she accounted for Anna's obesity in the RFC and asserts that the RFC conflicted with Anna's testimony regarding her difficulty walking. (R. 13, Pl.'s Mem. at 13-14.)

As Anna acknowledges, the ALJ expressly accounted for Anna's obesity in her RFC. (Id.; see also A.R. 29-30.) The ALJ noted Anna's diagnosis of morbid obesity and indicated that her BMI placed her in the "Level III (extreme)" obesity category. (A.R. 29.) The ALJ explained that she considered the cumulative effects of Anna's obesity and its impact on daily functioning, "in part by limiting her to standing and/or walking no more than 4 hours in an 8-hour workday." (Id.) The ALJ further noted

12

that given Anna's obesity, postural limitations were warranted beyond those assessed by the reviewing physicians. (Id. at 30.) Nonetheless, "even after taking into account the exacerbating impact of [Anna's] obese state," in addition to her immunological impairment, the ALJ determined that Anna was not limited beyond a light RFC. (Id.)

The court disagrees with Anna that the ALJ's consideration of her obesity was conclusory or otherwise inadequate. This is not a case in which the ALJ gave short-shrift to Anna's obesity. The ALJ considered the impairment throughout her sequential analysis, discussed Anna's testimony that she has "ongoing difficulty" with standing and walking, and limited Anna to standing or walking no more than four hours in an eight-hour workday. (Id. at 26-30.) The ALJ further restricted Anna to occasional postural activities in part because of her obesity. (Id. at 30.) At the same time, the ALJ considered treatment records showing: "normal range of motion in her back and extremities with normal alignment, strength, sensation, motor function" and no "tenderness, swelling, or neurological deficits," (id.); no radiating pain in her lower extremities and "normal gait without use of an assistive device," (id. at 29); and ability "to ambulate with a stable gait," (id.). (See also id. at 358-59, 365-66, 380, 432.) Considering the medical record as a whole, including evidence relating to Anna's obesity, the ALJ determined that Anna was capable of performing light work. (Id. at 29.) Thus, the ALJ provided substantial evidence to support her evaluation of Anna's obesity and its effect on her capacity to function.

13

## C.     Symptom Evaluation

Anna argues that the ALJ erred by discounting her allegations—particularly those relating to her hand symptoms—based on activities of daily living. (R. 13, Pl.'s Mem. at 11-12.) An ALJ must consider objective medical evidence, daily activities, allegations of pain, aggravating factors, course of treatment, and functional limitations when assessing a claimant's subjective complaints. 20 C.F.R. § 404.1529(c); *see also* SSR 16-3p, 2017 WL 5180304, at *1 (2017). Typically, a court grants deference to the subjective symptom evaluation because an ALJ has the opportunity to observe the claimant testify. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). But an ALJ's "failure to adequately explain his or her credibility finding by discussing specific reasons . . . is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

At the administrative hearing, Anna testified that she has swelling in her right hand and left thumb. (A.R. 53.) The swelling in her right index finger is particularly problematic, she said, because it prevents her from opening bottles and even combing her own hair. (Id. at 53-54.) She also has difficulty picking up objects with her right hand and cannot use a computer. (Id. at 59.) She uses a cell phone but texts with her left hand. (Id.) Her family members assist her with cleaning, bathing, dressing, shopping, and cooking. (Id. at 54-56; see also id. at 228, 246, 248.) The ALJ discounted Anna's allegations relating to her hand symptoms based on her ability to shop online and in stores, drive, prepare meals, launder her clothes, use public transportation, design nails, and socialize. (Id. at 29-30.)

14

The ALJ was permitted to consider Anna's daily activities, in combination with all other evidence of record, in evaluating the severity of her alleged symptoms. *See Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). The government correctly notes that the ALJ does not expressly equate Anna's ability to perform certain daily activities with her ability to maintain full-time employment. (R. 22, Govt.'s Mem. at 11.) Nevertheless, the ALJ describes Anna's daily activities and then finds that they "support an ability to perform hand manipulation without limitation," without explaining her finding. (A.R. 30; see R. 12, Pl.'s Mem. at 13-14; R. 31, Pl.'s Reply at 5.) In other words, the ALJ does not show how Anna's ability to perform such tasks supports her ability to sustain full-time, competitive work. *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) (noting that a claimant's "ability to do limited chores, cooking, and self-care says little about her ability to perform the tasks of a full-time job"). Nor does the ALJ explain her symptom assessment in light of Dr. Jain's finding that Anna is likely to have good days and bad days based on swelling and stiffness in her hands. (A.R. 357-59.) Accordingly, on remand the ALJ must reassess Anna's symptom allegations.

## Conclusion

For the foregoing reasons, Anna's motion is granted, and the government's motion is denied.

**ENTER:**

*(signature)*

**Young B. Kim**
**United States Magistrate Judge**

15